BUFFENBARGER, Plaintiff-Appellee, v. SIDNEY GRAIN MACHINERY CO., Defendant-Appellant.

Ohio Appeals, Second District, Shelby County.

No. 154. Decided November 8, 1950.

H. K. Forsyth, Sidney, for plaintiff-appellee.
Cummins & Boller, Sidney, for defendant-appellant.

## OPINION

By HORNBECK, J:

This is an appeal on questions of law from a judgment of the Common Pleas Court for the plaintiff in the sum of $514.88 with costs. The action was for breach of a contract of employment between the plaintiff, as employee, and defendant, as employer, by the terms of which the plaintiff was to be paid $100.00 per week plus his expenses and 25 per cent of net profits earned by the engineering department of defendant company.

No claim was made for money due on net profits.

The action was for one week's salary preceding the date that plaintiff left his work with the company and expenses together with $400.00 at the rate of $100.00 per week for the claimed wrongful termination of the contract in the failure of the defendant to give the plaintiff thirty days notice in advance of its intention to terminate the contract. Against this sum total plaintiff admitted a credit in the sum of $115.00 for money advanced to him by the defendant company. The defendant answered and after admitting the contract, generally denied all other averments of the petition. The plaintiff, among other things, plead faithful per-

formance of the terms of the contract which was traversed by the general denial of the answer. The cause went to trial to judge and jury resulting in a verdict signed by eleven jurors, the twelfth having been excused during the trial because of illness.

There was an issue whether or not the defendant had breached its contract in that it discharged the plaintiff without notice, its claim being that he voluntarily left the employment. However, no error is assigned to any of the proceedings excepting only the refusal of the trial judge to permit certain questions, propounded by counsel for the defendant, to be answered on the cross-examination of Edwin F. Seving, a witness for the plaintiff.

Plaintiff, in making his case, offered, in detail, proof of the work that he had done in the office and in the field and specified particularly the engineering jobs upon which he had rendered service and the expenses incurred in connection therewith. It also appeared as a part of the transaction by which the plaintiff entered the employment of the defendant that he had sold to the defendant certain office equipment in Decatur, Indiana, which he had used in connection with his engineering business there and also some $1,800.00 worth of bills receivable by plaintiff's business concern. The purchase price for this business, supplies and bills receivable was $2,000.00. Although there was no issue upon any claim of the plaintiff for money due by reason of the net profit provision in the contract considerable testimony was developed respecting this phase of the contract. It appeared that in determining net profits the contract provided,

"For such purposes, all services furnished by said Buffenbarger directly to The Sidney Grain Machinery Company including assistance on sales made by company representatives, but which are not charged separately to the customer will be charged to the company at the rate of Two dollars and a half per hour."

Defendant offered considerable testimony to the effect that there had been complaints respecting the service of the plaintiff in the field; that the company had been required to make certain changes on jobs that the plaintiff had engineered.

Leading up to the immediate question presented by this appeal defendant on cross-examination interrogated the plaintiff at length respecting the charges of $20.00 a day, presumably, eight hours at $2.50 an hour, that had been made

against the company by the plaintiff in connection with the carrying on of the business at Decatur and the moving of the furniture and supplies of this business to Sidney.

Beginning at page 58, counsel for defendant propounded and plaintiff answered, as follows:

Q. The contract of employment provides, does it not, that when you worked directly for the company you were to charge $2.50 an hour, is that right?

A. That's right.

Q. And that $2.50 an hour would be considered as gross sales by your department in determining at the end of the year whether you made a profit?

A. That's right.

Q. So that every dollar of that which you charged went to help make a profit in the department?

A. Yes.

Q. And if your department made a profit during the year. you got twenty-five percent after the $100.00 a week and the expenses had been deducted?

A. Twenty-five percent of the profit, yes.

Q. So, for that purpose you charged $20.00 a day for seven or eight days from August 31st to September 9th, 1948 for moving your office to Sidney, is that right?

A. Right.

Q. And you charged $20.00 a day for August 27, August 28 and August 30 for just getting ready to move your office to Sidney?

A. Yes.

Q. And you charged $20.00 a day October 1, 2 and 4 for getting yourself into the building over there?

A. That's right.

Q. And you charged $20.00 a day for so-called office work on October 30th, November 4th, November 6th and November 9th, which you testified this morning was for getting a stove and hauling some coal for a fire?

A. Yes, among other things.

Q. Did your ever consult with anybody about that?

A. He said if the janitor can't do it, I should do it.

Q. Did he understand you were charging $20.00 a day for it?

A. I think so.

Q. Did you tell him?

A. He knew that.

Q. Did you tell him?

Not answered.

356

Q. Did you tell Mr. Seving you were going to charge $20.00 a day for that purpose?

A. No.

Mr. Seving, Secretary, Treasurer and Assistant Manager of defendant company during the time that plaintiff was in its employ and his superior officer testified at length. On cross-examination he was questioned on the subject of the $2.50 per hour charge. at

Q. You remember that under the contract, Mr. Buffenbarger when he worked directly for the Company, was entitled to charge $2.50 an hour, is that right?

A. It was averaged out some way that the company was to receive for those services $20.00 a day.

Q. And that amount of $20.00 a day would be credited to the gross sales of Buffenbarger's engineering department, to be used in determining whether he made a profit at the end of the year?

A. Right.

Q. Did you ever know that he charged the company $20.00 a day for three days getting ready to move his office from Decatur to Sidney?

A. I presume it would be customary.

Q. Were you ever notified?

A. He was paid his regular weekly salary.

Then follow the questions to which the trial judge sustained the objections and which rulings are made the subject of this appeal, at page 87 of the record:

Q. Were you ever notified or told before it happened that Mr. Buffenbarger intended to charge Sidney Grain Machinery Co. $20.00 a day for getting ready to move his office from Decatur to Sidney?

Q. Were you ever told, Mr. Seving, by Mr. Buffenbarger, that he was charging $20.00 a day for August 31st, September 1st, 2nd, 3rd, 4th, 8th and 9th, of 1948 for—

Q. Were you ever told, Mr. Seving, by Mr. Buffenbarger, that he was charging $20.00 a day for August 31st, September 1st, 2nd, 3rd, 4th, 8th and 9th of 1948 for the purpose of moving his office from Decatur, Indiana, to Sidney, Ohio?

Q. Mr. Seving, were you notified by Mr. Buffenbarger or anyone else, that on October 30th, November 4th, November 6th, November 9th and November 11th, 1948, Mr. Buffenbarger was charging the Company $20.00 a day for the purpose of getting a stove and coal into his office in Sidney?

It is the claim of the appellant that the answers to these questions may have reflected dishonest practice on the part of the plaintiff and, therefore, assisted the defendant in

establishing its denial that the plaintiff had faithfully performed his obligations under the contract.

It is our opinion that the refusal to admit this testimony was within the discretionary right of the trial judge. He could have permitted the answers to be made or he could have refused to admit them. This is true because of the development of the testimony on the subject as it had been produced theretofore in the trial. The form of the questions, as propounded by counsel, indicated that the contract provided that if Mr. Buffenbarger worked directly for the company he was entitled to charge $2.50 an hour for his services. Of course, it is understood that at no time did Mr. Buffenbarger receive $2.50 an hour. He was paid on the basis of his weekly salary and this $2.50 an hour provision only would be considered as a basis of computation of net profit if, and when, the parties reached that question. It appeared that Mr. Buffenbarger made some request for such an allowance but no agreement with respect thereto was effected by the parties.

Mr. Buffenbarger admitted, without qualification, that he had made the charge of $2.50 an hour for the services rendered at the times mentioned at the Decatur office. This, then, was not in controversy. Mr. Seving also testified that he considered such charges customary and the inference is that he felt they were proper. What difference then did it make whether he had been formerly told of these charges? It was obvious what his opinion would have been had he been told.

The testimony sought to be elicited did not come upon cross-examination of a witness who had testified as to the general reputation of the plaintiff wherein he might possibly have been interrogated as counsel attempted to do.

We are unable to conclude that the denial to receive the answers to these questions could have been prejudicial to the defendant. 2 O. Jur. 1279. Had Mr. Seving said that he had not heard of the charges, it follows that the jury would have known no more as to the fact that they had been made than it had already learned from the admissions of Mr. Buffenbarger. On the other hand, had the witness replied that he had heard and knew all about the charges and the subject had been developed, his answer would, in probability, be no different than his former statement that he considered such charges customary.

The answers if permitted could not have been probative as to the honesty of the plaintiff. The jury would have received nothing more than it had already heard on the subject upon which it had to pass judgment, viz: the faithfulness of the

**358**

plaintiff in meeting his obligations under the contract. This issue was squarely presented in the general charge.

We are satisfied that the rulings of the trial judge were not prejudicially erroneous to the defendant in the trial of the cause.

The judgment will be affirmed.

MILLER, PJ, and WISEMAN, J, concur.